UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARLENE BROWN,

    Plaintiff,

v.

KELSEY-HAYES, ET AL.,

    Defendants.

_____/

Case No. 17-12124

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
DAVID R. GRAND

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [20]**

Plaintiff Darlene Brown commenced this employment discrimination action against Defendants Kelsey-Hayes Company ("Kelsey-Hayes"), TRW Automotive, Inc., and ZF TRW Automotive Holdings Corporation ("TRW") on June 29, 2017. Before the Court is Defendants' Motion for Summary Judgment [20] filed on April 2, 2018. The Motion is fully briefed. The Court held a hearing on the Motion on November 14, 2018. For the reasons stated below, the Court **GRANTS** Defendants' Motion for Summary Judgment and **CLOSES** the case.

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendant Kelsey-Hayes is an auto parts manufacturer and is the subsidiary of global parts manufacturer, Defendant TRW. In November 2003, Kelsey-Hayes hired Plaintiff Darlene Brown as an administrative assistant. From 2006 until

January 2016, Plaintiff served as executive secretary to the Vice President of Internal Audit, Ann Lipanski.

Plaintiff is sixty-one years old and suffers from asthma. Since 2014, she has used a wheelchair. Throughout her twelve years of employment, Kelsey-Hayes consistently approved Plaintiff's requests for intermittent leave under the Family Medical Leave Act ("FMLA").

Each year, VP Lipanski evaluated Plaintiff's performance using an Employee Performance & Development Process ("EPDP") form. On the EPDP form, the supervisor summarizes the employee's performance using the following ratings: "Outstanding Contribution," "Solid Contribution," "Improvement Required," or "Too Soon to Evaluate."

During her tenure at Kelsey-Hayes, Plaintiff never received an "Outstanding Contribution" rating. In 2013, Lipanski rated Plaintiff's overall performance as "Improvement Required," noting several deficiencies. In 2014, Lipanski rated Plaintiff's overall performance as "Solid Contribution," explaining that Plaintiff had improved, but was still inconsistent.

In May 2015, a German company, ZF Friedrichafen AG, acquired TRW and Kelsey-Hayes. As a result of the acquisition, Kelsey-Hayes no longer needed Lipanski's VP position. In late 2015, after learning that Kelsey-Hayes would be eliminating her position, Lipanski announced her intent to leave the company.

Plaintiff claims that, prior to Lipanski's resignation, Lipanski and Lisa McGunagle, the HR Manager for IT and Finance, had a dispute regarding whether one of Plaintiff's days off constituted FMLA leave or a vacation day. Plaintiff maintains that, upon reviewing her file, McGunagle made a comment about Plaintiff's absences to the effect of "wow this girl is never here." Arb. Tr. 123:13-24 Mar. 9, 2017.

On November 20, 2015, Lipanski completed Plaintiff's 2015 EPDP form and gave her an overall rating of "Solid Contribution." But on December 4, 2015, Lipanski's last day of work, she changed Plaintiff's rating from "Solid Contribution" to "Solid Contribution Minus." Although Plaintiff typically reviewed her EPDPs with Lipanski in February of each year, she did not review her 2015 EPDP with a supervisor after Lipanski resigned.

On January 14, 2016, McGunagle, and former CFO, Joe Cantie, informed Plaintiff that the company was letting her go. Kelsey-Hayes terminated Plaintiff because the company no longer needed a secretary for Lipanski, whose position had been eliminated as a result of the acquisition.[1] Plaintiff was not terminated for performance reasons. When Plaintiff asked about the possibility of being transferred

---

[1] Plaintiff's termination letter stated: "As you are aware, ZF TRW no longer has a Vice President of Internal Audit. Therefore, the decision has been made to eliminate the Senior Executive Secretary role reporting to the Vice President of Internal Audit. As a result, you are being permanently laid off from Kelsey-Hayes Company effective immediately."

to another available position within the company, McGunagle and Cantie told her to apply through the company's website.

After her termination, Plaintiff hired an attorney. On February 12, 2016, Plaintiff's counsel sent McGunagle a letter alleging that Kelsey-Hayes' decision to terminate Plaintiff, as opposed to place her in an open position within the company, was motivated by her past use of FMLA in violation of the FMLA, and her disability in violation of the ADA. Plaintiff cited to Kelsey-Hayes' Job Positing Policy procedure which provides:

> Job openings will be communicated by posting the position on the TRW intranet and/or internet career site. Situations in which a job opening may not be posted on the intranet and/or internet career site include . . . . When transferring an employee to the open position would prevent a demotion or eliminate the need for a reduction in the workforce.

Def.'s Ex. L.

Between February 2016 and August 2017, Plaintiff applied for several executive secretary and assistant positions with Kelsey-Hayes.[2] She was never offered an interview for any of the available positions.

Pamela Sue Hoye, the company's Talent Acquisition Manager, testified that she did not interview Plaintiff for eight positions based on her review of Plaintiff's EPDPs. Arb. Tr. 187:6-11. Hoye explained that Plaintiff "me[t] the basic

---

[2] The parties dispute whether Plaintiff first began to apply for open positions on February 4, 2016 or February 16, 2016. *See* [Dkt. #23-13].

Page **4** of **14**

qualifications, but as far as competency goes . . . [sh]e didn't feel like she was competent for the role that was open." Arb. Tr. 229:1-4.

Patricia Zazzetti, the HR Director, testified that she did not interview Plaintiff for an open position because of discussions she had with McGunagle about her performance. Arb. Tr. 135:16-18. Zazzetti examined Plaintiff's EPDPs and noticed that, over the last three years, "there were errors being made," and she had demonstrated "[a lack of] attention to detail," and "problem[s] with scheduling issues when maintaining calendars [and] travel arrangements." Arb. Tr. 145:3-9.

Pursuant to Kelsey-Hayes' Problem Resolution Policy, Plaintiff filed an arbitration request on April 1, 2016. Thereafter, she continued to apply for positions at the company. An arbitration proceeding was held on March 9, 2017 and March 10, 2017, at which Plaintiff, Lipanski, McGunagle, Cantie, and Hoye testified. On June 9, 2017, the Arbitrator denied relief.

On June 26, 2017, Plaintiff commenced this action alleging that Defendants discriminated and retaliated against her in violation of the Americans with Disabilities Act ("ADA"), the Age Discrimination Employment Act ("ADEA"), the FMLA, Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA").

Plaintiff alleges that her disability, age, and prior FMLA leave were motivating factors in Defendants' decision not to transfer her to, or hire her for, open

qualifications, but as far as competency goes . . . [sh]e didn't feel like she was competent for the role that was open." Arb. Tr. 229:1-4.

Patricia Zazzetti, the HR Director, testified that she did not interview Plaintiff for an open position because of discussions she had with McGunagle about her performance. Arb. Tr. 135:16-18. Zazzetti examined Plaintiff's EPDPs and noticed that, over the last three years, "there were errors being made," and she had demonstrated "[a lack of] attention to detail," and "problem[s] with scheduling issues when maintaining calendars [and] travel arrangements." Arb. Tr. 145:3-9.

Pursuant to Kelsey-Hayes' Problem Resolution Policy, Plaintiff filed an arbitration request on April 1, 2016. Thereafter, she continued to apply for positions at the company. An arbitration proceeding was held on March 9, 2017 and March 10, 2017, at which Plaintiff, Lipanski, McGunagle, Cantie, and Hoye testified. On June 9, 2017, the Arbitrator denied relief.

On June 26, 2017, Plaintiff commenced this action alleging that Defendants discriminated and retaliated against her in violation of the Americans with Disabilities Act ("ADA"), the Age Discrimination Employment Act ("ADEA"), the FMLA, Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA").

Plaintiff alleges that her disability, age, and prior FMLA leave were motivating factors in Defendants' decision not to transfer her to, or hire her for, open

positions. Plaintiff further alleges that Defendants refused to interview her in retaliation for having taken FMLA leave and having sent a letter notifying the company of her intent to sue.

Defendants filed this Motion for Summary Judgment [20] on April 2, 2018. Plaintiff filed a Response [23] on April 23, 2018. Defendants filed a Reply [29] on May 11, 2018. The Court held a hearing on November 14, 2018.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

The *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) framework governs Plaintiff's discrimination and retaliation claims under the ADA, ADEA, and

FMLA. *See, e.g.*, *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 384 (6th Cir. 2017) (FMLA); *Rosenthal v. Faygo Beverages, Inc.*, 701 F. App'x 472, 476 (6th Cir. 2017) (ADEA); *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016) (ADA). First, Plaintiff bears the burden of establishing a prima facie case of discrimination and retaliation. If Plaintiff can establish a prima facie case, the burden shifts to Defendants to set forth a legitimate non-discriminatory reason for deciding not to transfer or rehire. Finally, the burden shifts back to Plaintiff to show that Defendants' proffered reason is a pretext for discrimination.

## I. Discrimination[3]

### A. Prima facie case

#### i. ADA and PWDCRA[4]

To establish a prima facie case of discrimination under the ADA, Plaintiff must show that "1) [she] is disabled; 2) [she] was otherwise qualified for the position, with or without reasonable accommodation; 3) [she] suffered an adverse action; 4) the employer knew or had reason to know of [her] disability; and 5) [she] was replaced or the job remained open." *Yarberry v. Gregg Appliances, Inc.*, 625 F. App'x 729, 735 (6th Cir. 2015) (internal citations omitted).

---

[3] Plaintiff appears to have abandoned her FMLA interference claim. As such, the Court analyzes only Plaintiff's ADA and ADEA discrimination claims.
[4] PWDCRA claims are analyzed under the same standard as ADA claims. *Ferrari*, 826 F.3d at 893 n.3.

Defendants challenge only the fourth element, arguing that neither Hoye nor Zazzetti—the managers who reviewed Plaintiff's applications but declined to interview her for any open positions—knew that Plaintiff was disabled. Hoye and Zazzetti testified that they had never seen Plaintiff in person and did not know that she used a wheelchair or otherwise suffered a disability.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds this argument unavailing. During the application process, Plaintiff submitted a Voluntary Self-Identification of Disability form in which she indicated that she had a disability. Furthermore, McGunagle, along with other Kelsey-Hayes employees, saw Plaintiff come into work in a wheelchair and were aware that she used portable oxygen. This evidence is sufficient to create a fact question as to whether Hoye and Zazzetti knew, or had reason to know, that Plaintiff suffered a disability. Accordingly, Plaintiff has satisfied her burden of establishing a prima facie case of ADA discrimination.

### ii. ADEA and ELCRA[5]

To establish a prima facie case of age discrimination, Plaintiff must show that: "(1) [s]he was at least 40 years old at the time of the alleged discrimination; (2) [she] was subjected to an adverse employment action; (3) [she] was otherwise qualified

---

[5] "ELCRA claims are analyzed under the same standards as federal ADEA claims." *Geiger v. Tower Auto.*, 579 F.3d 614, 626 (6th Cir. 2009).

for the position; and (4) after [she] was rejected, a substantially younger applicant was selected." *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 459–60 (6th Cir. 2004) (internal citation omitted).

Plaintiff was born on December 18, 1956. All but one of the applicants selected for the vacant positions were younger than Plaintiff. Although many of these applicants were only a few years younger than Plaintiff, the Court considers approximately five of the ten hired "substantially younger" than her for purposes of satisfying the fourth element. *See Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003) (noting that age differences of ten or more years generally satisfy the fourth element). Construing the evidence in Plaintiff's favor, the Court concludes that Plaintiff has satisfied her burden of establishing a prima facie case of discrimination under the ADEA.

### B. Legitimate, non-discriminatory reason

Defendants submit that they terminated Plaintiff because they no longer needed a secretarial position for Lipanski and did not rehire her because of her poor performance record. *See Hemmert v. Quaker Oats Co.*, 157 F. Supp. 2d 864, 879 (S.D. Ohio 2000) (noting that a "failure to re-hire" claim "is properly analyzed under the burden-shifting *McDonnell Douglas* approach[.]").

Plaintiff claims that, instead of termination, she was entitled to a transfer under company policy because there were open secretary positions. To support her

argument, Plaintiff first relies on a flowchart describing the TRW Recruitment Process. Pl.'s Ex. 7. The flowchart provides that, when an employee resigns, the Hiring or HR Manager should survey the outgoing employee's department to determine whether there are any internal resources eligible for appointment. If the Manager finds a qualified employee within the department, she may appoint or promote that employee to the vacant position.

Plaintiff also relies on the company's Job Posting Policy which provides that TRW need not post a position on its career site when "transferring an employee to the open position would . . . eliminate the need for a reduction in the workforce." Def.'s Ex. L.

Plaintiff's reliance on these policies is misguided. As an initial matter, the TRW Recruitment Process flowchart applies only where an employee has resigned, but notably, Plaintiff did not resign in this case. Further, neither of these policies require Kelsey-Hayes to transfer an employee to an available position within the company in lieu of termination.

Ultimately, hiring decisions lie within the discretion of the HR and Talent Acquisition managers. Hoye chose not to interview Plaintiff for eight different positions because Plaintiff's final three EPDPs led Hoye to conclude that Plaintiff was not competent for any of the available roles. Hoye evaluated the open positions, had conversations with the managers of those roles, and determined that Plaintiff

was not a good candidate given her performance history. Arb. Tr. 186:2-7. Specifically, she noted that Plaintiff had issues with communication, making travel arrangements, expense reporting, and timeliness. Arb. Tr. 189-190. Defendants have met their burden at this stage.

**C. Pretext**

To establish pretext, Plaintiff must show: "(1) that the proffered reason has no basis in fact; (2) that the proffered reason did not actually motivate the adverse employment action; or (3) that the proffered reason was insufficient to motivate the adverse employment action." *Sarvak v. Urban Retail Properties, LLC*, 524 F. App'x 229, 234 (6th Cir. 2013) (internal citations omitted).

Plaintiff argues that Defendants' proffered reason—her deficient performance—did not actually motivate their decision not to transfer or rehire her. To show pretext, Plaintiff points to the following evidence: her twelve-year employment at Kelsey-Hayes; the last-minute change to her 2015 EPDP, which she never had the opportunity to review with Lipanski; and Defendants' hiring of younger, non-disabled individuals with less experience.

Plaintiff conflates Defendants' decision to terminate her with Hoye and Zazzetti's decision not to rehire her. After careful consideration, Hoye and Zazzetti chose neither to interview Plaintiff nor select her for the available positions. Their decisions were based on Plaintiff's twelve-year employment history at Kelsey-

Hayes, during which she never received an "Outstanding Contribution" rating from her supervisor.

In 2013, when she gave Plaintiff an overall rating of "Improvement Required," Lipanski indicated that Plaintiff made readily identifiable errors in data, required improvement in timely submitting financial reports and meeting deadlines, and needed to strengthen her communication skills. In 2014, although she gave Plaintiff an overall rating of "Solid Contribution," Lipanski noted that Plaintiff's performance was inconsistent, and that she needed to improve her communication skills.

Moreover, Lipanski testified that, throughout the entire period of her entire employment, Plaintiff had problems with unscheduled absences, excluding FMLA days. Arb. Tr. 271:12-13. Lipanski further testified that she changed Plaintiff's final EPDP rating from "Solid Contribution" to "Solid Contribution Minus" because Plaintiff had difficulty making travel arrangements for her which resulted in her missing important meetings. Arb. Tr. 287-88.

In light of her record, it is unsurprising that Defendants did not want Plaintiff back at Kelsey-Hayes. Hoye and Zazzetti, based on their experience, and in their discretion, decided to take a chance by hiring new, qualified candidates who did not have a history of inconsistent performance with their company. Plaintiff fails to present any evidence to rebut Defendants' legitimate—and understandable—reasons

for not rehiring her. Because Plaintiff's "subjective interpretations or feelings are insufficient to establish pretext," *Rosenthal*, 701 F. App'x at 480 (internal citation omitted), her ADA and ADEA discrimination claims fail.

## II. Retaliation

Plaintiff alleges that Defendants' decision not to rehire her constitutes retaliation in violation of the ADA, ADEA, and FMLA.

To establish a prima facie case of retaliation, Plaintiff must show that: 1) she availed herself of a protected right under the Act; 2) her employer knew she availed herself of that right; 3) she suffered an adverse employment action; and 4) there was a causal connection between the exercise of her rights under the Act and the adverse employment action. *See, e.g.*, *Marshall*, 854 F.3d at 381 (internal citations omitted) (FMLA); *Baker v. Windsor Republic Doors*, 414 F. App'x 764, 776 (6th Cir. 2011) (ADA); *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007) (internal citations omitted) (ADEA).

Defendants argue that Plaintiff's retaliation claims fail for the same reasons that her discrimination claims fail. First, because the decision-makers, Hoye and Zazzetti, were unaware that Plaintiff had engaged in the protected activity of taking FMLA leave and notifying Kelsey-Hayes of alleged discrimination; and second, because there is no evidence to support the inference that their decisions not to rehire Plaintiff were pretextual.

The Court need not rule on the first issue of whether Hoye and Zazzetti knew that Plaintiff had engaged in protected activity because, as previously explained, Plaintiff cannot show pretext. In short, she has not presented sufficient evidence on which a reasonable jury could find that Defendants decided not to rehire her in retaliation for having taken FMLA leave or for having notified the company of her intent to sue for discrimination. Accordingly, summary judgment on Plaintiff's retaliation claims is warranted.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment [20] is **GRANTED**.

**SO ORDERED**.

Dated: December 11, 2018

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge